1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7   UNITED STATES OF AMERICA,                    )
8                                    Plaintiff,   )   Case No.: 2:13-cr-00409-JAD-GWF
                                                  )
9   vs.                                           )   <u>**FINDINGS &**</u>
                                                  )   <u>**RECOMMENDATIONS**</u>
10  WALTER ERNESTO RAYMUNDO-LIMA                  )
                                                  )   **RE: Motion to Dismiss (#17)**
11                                                )
                                                  )
12                                   Defendant.   )
13  _____     )

14      This matter is before the Court on Defendant Walter Ernesto Raymundo-Lima's Motion to

15  Dismiss Indictment (#17), filed on April 23, 2014.  The Government filed its Response (#24) on

16  May 7, 2014, and the Defendant filed his Reply (#25) on May 14, 2014.  The Court conducted a

17  hearing in this matter on May 22, 2014.

18      Defendant Raymundo-Lima is charged with being a deported alien found unlawfully in the

19  United States in violation of 8 U.S.C. § 1326.  *Indictment (#1)*.  The indictment alleges that

20  Defendant was deported and removed from the United States on or about August 11, 2003, and that

21  he was thereafter found in the United States on or about October 20, 2013.  Defendant moves to

22  dismiss the indictment on the grounds that the underlying removal order was entered in violation of

23  his right to due process of law and that he has been prejudiced by that violation.  The Government

24  argues that the entry of the removal order did not violate Defendant's due process rights, and, in

25  any event, he was not prejudiced by any alleged due process violation.

26                              **FACTUAL BACKGROUND**

27      On February 22, 1999, the Immigration and Naturalization Service issued a Notice to

28  Appear (NTA) to the Defendant charging him with being an alien present in the United States who

has not been admitted or paroled. *Motion to Dismiss (#17), Exhibit A.* The NTA ordered

Defendant to appear before an immigration judge at the U.S. Post Office/Courthouse in San

Antonio, Texas on a date and at a time "**To Be Set**." *Id.* The Certificate of Service on the second

page of the NTA states that the respondent [Defendant] was served with the NTA by the Border

Patrol Agent on February 22, 1999. The printed language in the Certificate of Service further states

that the respondent was provided with a list of organizations and attorneys which provide free legal

services and was provided with oral notice in the Spanish language of the time and place of his or

her hearing and of the consequence of failure to appear as provided in section 240(b)(7) of the Act.

The Certificate of Service was signed by the Border Patrol Agent and by the respondent. *Id.*

Above the Certificate of Service, the NTA contains a section entitled Notice to Respondent

which includes the following provision:

> **Failure to Appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notice of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

*Motion to Dismiss (#17), Exhibit A; Government's Response (#24), Attachments, pg. 3.*

On February 22, 1999, Defendant executed a "request for hearing before an immigration

judge to determine whether I may remain in, or will be removed from the United States. I

understand that if I wish to request political asylum I must request a hearing." *Government's*

*Response (#24), Attachments, pg. 7.*

Defendant was also issued an Order of Release on Recognizance on February 22, 1999,

which stated that he must report for any hearing or interviews as directed by the Immigration and

Naturalization Service or the Executive Office for Immigration Review, surrender for removal from

the United States if so ordered, and "must report in person to District Director at 8940 Four Winds

2

Dr., San Antonio, Tx. 78239 on April 5, 1999 at 9:00 AM." *Attachments, pg. 9.* The Order of

Release on Recognizance contains an Alien's Acknowledgment of Conditions of Release on

Recognizance, signed by Defendant, which states: "I hereby acknowledge that I have (read) (had

interpreted and explained to me in the ***Spanish*** language) and understand the conditions of my

release as set forth in this order." *Id.*

On February 22, 1999, the Border Patrol Agent also issued a Notice to EOIR, addressed to

the Office of the Immigration Judge, Executive Office for Immigration Review, stating that the

respondent had been released from INS custody pursuant to an order of recognizance and that upon

release from INS custody, he failed to provide a United States address or telephone number. The

Notice to EOIR also stated that upon release "the respondent was reminded of the requirements

contained in section 239(a)(1)(F)(ii) of the Immigration and Nationality Act was provided with an

EOIR change of address form (EOIR-33)." *Attachments, pg. 10.*

On November 30, 1999, the immigration judge issued a Memorandum and Order which

stated that Defendant's removal hearing was scheduled for November 30, 1999 and that

"Respondent was not present and no reasonable cause was provided for respondent's failure to

appear." *Attachments, pg. 11.* The Memorandum and Order further stated that "[a] notice of the

hearing was not given to the respondent because the respondent failed to provide the court with

his/her address as required under Section 239(a)(1)(F) of the Act after having been advised of that

requirement in the Notice to Appear." *Id.*

The  Memorandum and Order further stated:

> In an in absentia hearing held pursuant to Section
> 240(b)(5)(A) of the Act the Service has the burden of proving the
> alien is removable by evidence which is clear, unequivocal and
> convincing.  To meet its burden of proof the Service offered: Form I-
> 213 Record of Inadmissible/Deportable Alien.
>
> The Immigration Judge finds that the evidence offered by the
> Service relates to the respondent and it is entered into the record as
> an Exhibit.
>
> The respondent, not being present, was unable to meet any
> applicable burden of proof or to apply for or establish eligibility for
> any relief to prevent removal from the United States.  Any previously
> filed relief application is deemed abandoned by respondent's failure
> to appear.

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    Upon consideration of all the evidence of record, which the Immigration Judges finds to be clear, unequivocal and convincing, the Immigration Judge concludes that respondent is subject to being removed from the United States for the reason(s) charged in the Notice to Appear.

    WHEREFORE IT IS HEREBY ORDERED that respondent be removed from the United States to El Salvador.

*Attachments, pg.12; Motion to Dismiss (#17), Exhibit D, pg. 3.*

  The Clerk of the Immigration Court filed a document on December 2, 1999 stating that the Immigration Court was unable to forward a copy of Immigration Judge's decision to Defendant because no address was provided. *Government's Response (#24), Attachments, pg. 13.*

  On March 13, 2001, Defendant filed an Application for Temporary Protected Status. *Motion to Dismiss (#17), Exhibit E.* The first page of the application asks: "Are you now or have you ever been under immigration proceedings?" Defendant answered "no." On the second page of the application, Defendant stated: "I am a national of the foreign state of 07/22/99, and I entered the United States on EL SALVADOR, and I have resided in the United States since that time." (Sic). *Id.* The application form contains several questions for the applicant, numbered "a" through "o." Question "h" asks: "[H]ave you been excluded and deported from the United States within the past year, or have been deported or removed from the United States at government expense within the last 5 years (20 years if you have been convicted of an aggravated felony)." Defendant answered "N/A" (not applicable) to all of the questions. *Id.* On March 13, 2001, Defendant also submitted an Application for Employment Authorization which was granted by the INS for the period from May 7, 2001 until September 9, 2001. *Motion to Dismiss(#17), Exhibit E.* Defendant submitted another Application for Employment Authorization which was granted until September 9, 2003. *Motion to Dismiss(#17), Exhibit F.*

  Defendant has submitted as an exhibit to his motion, the first page of an INS Memorandum of Investigation, dated July 1, 2002. *Motion to Dismiss (#17), Exhibit G.* This memorandum apparently related to Defendant's arrest on June 30, 2002 for transporting undocumented aliens. The memorandum states that Defendant "was in possession of a valid INS Employment . . .

4

Authorization Card, however, records checks showed he was ordered deported in absentia in

November 1999." *Id.*  The memorandum further states:

> On June 30, 2002, REYMUNDO was served INS Form I-826, Notice of Rights and Request for Disposition, to which he signed requesting an immigration hearing.  REYMUNDO was held for removal proceedings.  On July1, 2002 SSA Long was informed by INS Denver District Counsel that REYMUNDO fell under the class of Temporary Protected Status (TPS), therefore the order of deportation is held in abeyance until a final determination is made on the TPS class.

*Motion to Dismiss (#17), Exhibit G.*

On July 10, 2002, Defendant Raymundo-Lima was indicted in the United States District

Court for the District of Utah on one count of transporting undocumented aliens in violation of 8

U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II).  *Government's Response (#24), Attachments, pgs. 14-15.*

On September 16, 2002, Defendant signed a Statement by Defendant in Advance of Plea of Guilty

pursuant to which he agreed to plead guilty.  *Attachments, pgs. 16-23.*  The Statement also contains

the following a statement of stipulated facts by Defendant:

> On or about June 30, 2002, I was transporting eight passengers in a blue 2002 Dodge Caravan on Main Street in Blanding, Utah when I was stopped by the police.  I transported these eight passengers knowing or in reckless disregard of the fact that they are all undocumented aliens.  I transported these passengers in furtherance of their status as illegal aliens.  These passengers were transported for profit.

*Government's Response (#24), Attachments, pg. 23.*

On December 2, 2002, the Defendant was sentenced to a term of 12 months imprisonment.

The judgment stated: "Upon completion of his sentence the defendant is to be turned over to INS

for deportation."  He was also placed on supervised release for a period of 36 months upon release

from confinement. *Government's Response (#24), Attachments, Judgment of Conviction, pgs. 24-*

*28.*

The Government has submitted a Department of Justice, Immigration and Naturalization

Service document entitled Record of Deportable/Inadmissible Alien.  According to the narrative

summary in this document:

. . .

1

2

3

4

5

6

7

      On or about 2-December 2002, SUBJECT was sentenced to one year in custody of the Bureau of Prisons, to be followed by deportation to El Salvador and a period of three (3) years of unsupervised release. Based on the aforesaid conviction, SUBJECT is an AGGRAVATED FELON. A review of the Service file indicates SUBJECT was ordered deported from the United States to El Salvador on 2-December-1999 at San Antonio, Texas. SUBJECT'S status as an aggravated felon and the expiration of his TPS approval now permit SUBJECT to be removed from the U.S. pursuant to the aforementioned order. DEN/ADC Eileen Trujillo concurs that SUBJECT should now rightfully be designated a Bag and Baggage case, eligible for removal based on the 2-December-1999 order. Nothing more follows.

8

*Government's Response (#24), Attachments, pg. 29.*

9

      Defendant was reportedly removed from the United States on August 11, 2003.

10

*Attachments, pg. 33.*

11

**DISCUSSION**

12

      "An alien who 'has been denied admission, excluded, deported, or removed' commits a

13

crime if the alien 'enters, attempts to enter, or is at any time found in, the United States.' 8 U.S.C.

14

§ 1326(a). One method of violating § 1326 is returning to the United States after entry of a prior

15

removal order. " *United States v. Hernandez-Arias*, 745 F.3d 1275, 1280 (9th Cir. 2014).

16

*Hernandez-Arias* notes that Congress has strictly limited an alien's ability to collaterally challenge

17

such a removal order: "An alien facing criminal charges may initiate a collateral attack on an

18

underlying order only if '(1) the alien exhausted any administrative remedies that may have been

19

available to seek relief against the order; (2) the deportation proceeding at which the order was

20

issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the

21

order was fundamentally unfair.' 8 U.S.C. § 1326(d)." *Id.  Hernandez-Arias* further states that

22

"[i]f the alien establishes a due process violation that prevented his waiver of appeal from being

23

knowing and intelligent, he is excused from the exhaustion requirement. *See United States v.

24

Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). Therefore the crucial question . . . . is

25

whether [the defendant] has demonstrated a due process violation and fundamental unfairness.

26

Fundamental unfairness 'for purposes of § 1326(d)(3) [is demonstrated] when the deportation

27

proceeding violated the alien's due process rights and the alien suffered prejudice as a result.'" *Id.*

28

. . .

When the record supports an inference that an alien in removal proceedings is eligible for relief from removal, the immigration judge must advise the alien of his eligibility for the potential relief. *United States v. Hernandez-Arias*, 745 F.3d at 1284, citing *Unites States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1999). As stated, the immigration judge is also required to inform the alien of his right to appeal from a removal order. *United States v. Ubaldo-Figueroa*, 364 F.3d at 1049. The failure to so inform the alien violates his right to due process of law.

The defendant has the burden to prove that he was prejudiced by the due process violation. *United States v. Gomez*, --- F.3d --- 2014 WL 1623725, *9 (9th Cir. 2014). To establish prejudice, the defendant must show that it was plausible that he would have received some form of relief from removal had he been afforded the opportunity to apply for such relief. The alien must show that he is not barred from receiving relief. If he is barred from receiving relief, his claim is not plausible. *Id.*, citing *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1056 (9th Cir. 2003).

1.      **Whether the November 30, 1999 Removal Order Violated Defendant's Due Process Right to Notice.**

The November 30, 1999 removal order was entered in Defendant's absence based on his failure to provide the INS or the immigration court with an address to which notice of the hearing could be sent and based on the immigration judge's determination that there was clear, unequivocal and convincing evidence in the record to support his removal. Defendant argues that the removal hearing did not comport with due process of law because he did not receive actual notice of the removal hearing.

8 U.S.C. § 1229(a)(1) provides that a written notice to appear (NTA) shall be given in person to the alien, or if personal service is not practical, through service by mail to the alien or his counsel. The NTA must inform the alien that he or she must immediately provide, or have provided, the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting the proceedings. The alien must also immediately notify the Attorney General of any change of address. 8 U.S.C. § 1229(a)(1)(F)(i)-(ii). 8 U.S.C. § 1229(a)(2) provides for the mailing of written notice to the alien of any change or postponement in . . .

the time and place of the proceedings.  Written notice is not required to be sent, however, if the

alien has failed to provide an address as required under § 1229(a)(1)(F).

8 U.S.C. § 1229a governs the conduct of removal proceedings before an immigration judge.

§ 1229a(b)(5)(A) states:

> Any alien who, after written notice required under paragraph (1) or
> (2) of section 239(a) [8 U.S.C. § 1229(a)] has been provided to the
> alien or the alien's counsel of record, does not attend a proceeding
> under this section, shall be ordered removed in absentia if the Service
> establishes by clear, unequivocal, and convincing evidence that the
> written notice was so provided and that the alien is removable (as
> defined in subsection (e)(2)).  The written notice by the Attorney
> General shall be considered sufficient for purposes of this
> subparagraph if provided at the most recent address provided under
> section 239(a)(1)(F) [8 U.S.C. § 1229(a)(1)(F)].

8 U.S.C. § 1229a(b)(5)(B) further states:

> No written notice shall be required under subparagraph (A) if the
> alien has failed to provide the address required under section
> 239(a)(1)(F) [8 U.S.C. § 1229(a)(1)(F)].

A removal order may be rescinded upon motion to reopen filed at any time if the alien

demonstrates that he did not receive notice of the hearing in accordance with 8 U.S.C. § 1229(a)(1),

or the alien demonstrates that he was in Federal or State custody and the failure to appear was

through no fault of his own.  8 U.S.C. § 1229a(b)(5)(C)(ii).[1]  The filing of a motion to reopen stays

the removal of the alien pending disposition of the motion by the immigration judge.  Any petition

for judicial review of a removal order entered in absentia shall be confined to (i) the validity of the

notice provided to the alien, (ii) the reasons for the alien not attending the proceeding, and (iii)

whether or not the alien is removable.  8 U.S.C. § 1229a(b)(5)(D).  *United States v. Kaweesa*, 450

F.3d 62, 68 (1st Cir. 2006) states that the restrictions on granting a motion to reopen a removal

hearing set forth in 8 U.S.C. § 1229a(b)(5)(C)(i) and (ii) "were adopted in response to a serious

problem of aliens deliberately failing to appear for hearings and thus effectively extending their

---

[1] § 1229a(b)(5)(C)(i) provides that an alien who received actual notice of the hearing may apply to
reopen the hearing within 180 days after the order of removal if the alien demonstrates that his failure to
appear was because of exceptional circumstances.  That provision does not apply in this case because it is
undisputed that Defendant did not receive actual notice of the hearing.

stay in this country." (citation omitted). *See also Vukmirovic v. Holder*, 621 F.3d 1043, 1049 (9th Cir. 2010).

The courts have approved the process by which the NTA does not set a specific date for the removal hearing, and the alien is subsequently notified by mail of the hearing date. The courts have also held that an alien is not entitled to reopen a removal hearing where his nonappearance was due to his failure to comply with his obligation to provide his address to the immigration court.

In *Gomez-Palachios v. Holder*, 560 F.3d 354, 356 (5th Cir. 2009), the alien, Gomez-Palachios, was served with an NTA substantially identical to the NTA in this case. The NTA ordered Gomez-Palachios to "appear before an immigration judge in San Antonio at a time and date 'to be set.'" Gomez-Palachios provided the INS with a mailing address at which he no longer resided when the notice of hearing was mailed. The immigration judge entered a removal order *in absentia*, but subsequently reopened the removal hearing when it was discovered that Gomez-Palachios had provided a change of address. A new hearing date was scheduled and another notice of the hearing was mailed to Gomez-Palachios. The second address was also invalid and the notice of hearing was returned to the immigration court stamped "attempted, not known." *Id.*, 560 F.3d at 357. A second removal order *in absentia* was therefore entered. More than four years later Gomez-Palachios moved to reopen the removal hearing. His motion was denied by the immigration judge and the Board of Immigration Appeals (BIA).

In affirming the denial of motion to reopen, the Fifth Circuit stated that the NTA specifically informed Gomez-Palachios of his obligation to provide contact information, and that if he failed to appear at his hearing, a removal order could be entered in his absence and he could be arrested and detained by the INS. *Gomez-Palachios*, 560 F.3d at 359. The court stated that "an NTA need not include the specific time and date of a removal hearing in order for the statutory notice requirements to be satisfied; that information may be provided in a subsequent NOH [notice of hearing]." *Id.*, citing *Haider v. Gonzales*, 438 F.3d 902, 907 (8th Cir. 2006) and *Dababmeh v. Gonzales*, 471 F.3d 806, 809 (7th Cir. 2006). The court also held that an in absentia removal order should not be revoked on the grounds that an alien did not actually receive notice of the removal hearing, if the lack of actual notice was due to the alien's failure to keep the immigration court

9

apprised of his current mailing address. *Id.*, at 360.   In support of this position, the court cited *Maghradze v. Gonzales*, 462 F.3d 150, 153-54 (2d Cir. 2006), *Sabir v. Gonzales*, 421 F.3d 456, 459 (7th Cir. 2006), and *Dominguez v. U.S. Attorney Gen.*, 284 F.3d 1258, 1260-61 & n. 4 (11th Cir. 2002).

The Ninth Circuit also holds that the date of the removal hearing does not have to be included in the NTA and that the alien may be notified of the hearing date by a subsequently mailed notice of hearing.  *Popa v. Holder*, 571 F.3d 890, 896 (9th Cir. 2009).  The court stated:

> Because circumstances may arise in which it is not feasible for an immigration court to state the date, time and place of a removal hearing at the time the NTA is sent, an immigration court must be permitted flexibility in sending the alien the date, time, and place of his removal hearing. Thus, we hold a Notice to Appear that fails to include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact sent to the alien.

> *Id.*

The NTA in *Popa* was mailed to and received by the alien at her post office box address which was on file with the immigration court.  The NTA stated that the removal hearing would be set at a later date.  Popa thereafter moved without informing the immigration court of her new address.  The notice of hearing was sent to Popa's address of record, but was not received by her. Popa did not appear at the hearing and the immigration judge entered an order for her removal in absentia.  Popa argued that because she did not receive actual notice of the removal hearing, the order violated her due process rights.   In rejecting Popa's argument, the court stated:

> The Due Process Clause of the Fifth Amendment of the United States Constitution "protects aliens in deportation proceedings and includes the right to a full and fair hearing as well as notice of that hearing." *Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997).  The "Supreme Court has made it clear that notice must be such as is reasonably calculated to reach interested parties." *Id.* (internal citation and quotation marks omitted).  An alien "does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied." *Id.* Due process "is satisfied if service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien." *Id.* The government satisfies notice requirements "by mailing notice of the hearing to an alien at the address last provided to the INS." *Dobrota*, 311 F.3d at 1211.  If an alien fails to appear at the removal hearing, an IJ may enter an order

1

2

of removal *in absentia* so long as these requirements are met. *See Khan v. Ashcroft*, 374 F.3d 825, 828 (9th Cir. 2004).

3

4

5

6

. . . . Although Popa contends her due process rights were violated because the NTA did not inform her of her duty to keep the government informed of any changes to her address, as discussed above, her contention is without merit.  The NTA did notify Popa of her duty to update her address after any changes, as well as the consequences of a failure to do so.  Thus, Popa's right to due process was not violated because the Immigration Court mailed notice of her hearing to Popa's last provided address.

7

*Id.*, at 898.

8

In this case, notice of the November 30, 1999 removal hearing was not sent to Defendant

9

Raymundo-Lima because he did not provide the INS or the immigration court with a mailing

10

address or telephone number when he was served with the NTA on February 22, 1999.  Although

11

the records indicate that Defendant was provided with an address form to complete and provide to

12

the immigration court, there is no evidence that he did.[2]  The NTA clearly informed Mr.

13

Raymundo-Lima of his obligation to provide his mailing address and of the consequences if he

14

failed to do so:

15

16

17

18

19

If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing.  If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

20

*Motion to Dismiss (#17), Exhibit A; Government's Response (#24), Attachments, pg. 3.*

21

Given the above statement in the NTA, together with Defendant's failure to provide an

22

address to the INS or the immigration court, his right to notice under the Due Process Clause was

23

not violated by the failure to provide him with actual notice of the date, time and place of the

24

removal hearing.

25

. . .

26

27

28

[2] The Order of Release on Recognizance also instructed Defendant to report to the District Director on April 5, 1999.  There is no evidence that Defendant reported as instructed.

11

Defendant also argues that the NTA was defective because it did not advise him of his eligibility to apply for relief from removal, such as voluntary departure pursuant to 8 U.S.C. § 1229c.  There is no requirement, however, that the NTA inform the alien of such potential eligibility.  *See* 8 U.S.C. § 1229(a)(1).  It is, instead, the immigration judge's duty to inform the alien of potential relief from removal during the hearing and to give him an opportunity to request such relief and develop the issue if he so desires.  *United States v. Hernandez-Arias*, 745 F.3d at 1284, citing *Unites States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1999).  Likewise, the immigration judge must inform the alien of his right to appeal from an order for his removal.  *United States v. Ubaldo-Figueroa*, 364 F.3d at 1048.  There is no due process violation where, as here, the alien, without legal justification, failed to appear at the removal hearing during which he would have been entitled to be informed of his rights and available relief.

Defendant's attempt to collaterally attack the removal order based on the lack of notice is also precluded by his failure to exhaust his administrative remedies.  Defendant arguably first learned of the removal order when he was arrested in June 2002.  *See Motion to Dismiss (#17), Exhibit G.*  Following his arrest, Defendant could have filed a motion in the immigration court to reopen his removal hearing pursuant to 8 U.S.C. § 1229a(b)(5)(C)(ii).  He would, of course, have been required to show that he did not receive notice of the removal hearing for reasons other than his own neglect.  Defendant did not file such a motion.  He therefore did not exhaust the administrative remedies to obtain relief from the removal order, if grounds existed for such relief.

### 2.    Whether Defendant was Prejudiced by Alleged Defects in the Removal Proceeding.

The Government argues that even if the November 30, 1999 removal order violated Defendant's right to due process of law, his subsequent aggravated felony conviction precludes any finding of prejudice as a result of the violation.  The Government bases its argument on the Ninth Circuit's decision in *United States v. Gomez*, --- F.3d ---, 2014 WL 1623725 (9th Cir. 2014).  In *Gomez*, the court held that a stipulated removal order violated the defendant's right to due process of law.  The defendant argued that he was prejudiced by the violation because he was eligible for and would have pursued prehearing voluntary departure under 8 U.S.C. 1229c.  Because the alien

had an aggravated felony at the time of the removal proceeding, however, he was not eligible for voluntary departure or any other form of relief from deportation. The court therefore held that he was not prejudiced by the due process violations.

At the time of the removal hearing on November 30, 1999, Defendant did not have an aggravated felony conviction, or any other criminal conviction as far as this Court is aware. Thus, if Defendant had appeared at the removal hearing, the immigration judge would have been obligated to advise him of his eligibility to apply for relief from deportation, including voluntary departure in lieu of removal. Based on the information available at that time, it is plausible that Defendant would have been granted voluntary departure and allowed to leave the country without being deported.

Defendant, of course, did not appear at the removal hearing. He was not served with the November 30, 1999 removal order until he was taken into custody on June 30, 2002. He remained in custody until his actual removal from the United States on August 11, 2003. By that date, Defendant had an aggravated felony conviction and he would have been subject to removal based on that conviction, assuming that he was not removed pursuant to the prior November 30, 1999 removal order. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of any aggravated felony at any time after admission is deportable."). An alien who has been convicted of an aggravated felony is not eligible for voluntary departure. 8 U.S.C. § 1229c(b)(1)(C). The Court therefore finds that Defendant was not prejudiced by any alleged due process defects in the November 30, 1999 removal order.

> **3.** **Whether Defendant's Removal from the United States in August 2003 Was Invalid Due to His Application for Temporary Protected Status.**

On March 13, 2001, Defendant Raymundo-Lima filed an Application for Temporary Protected Status pursuant to 8 U.S.C. § 1254a. He represented in his application that he entered the United States on July 22, 1999 and had resided in the United State since that time. *Motion to Dismiss (#17), Exhibit E.* Defendant argues that because his application for temporary protected status was still pending on or about August 11, 2003, his removal from the United States on that date was invalid.

13

1    8 U.S.C. § 1254a(b)(A)-(C) authorizes the Attorney General to designate any foreign state

2    for purposes of providing its nationals with temporary protected status in the United States, if he

3    finds that there is an ongoing armed conflict within the foreign state and due to the conflict,

4    requiring the return of aliens to that state would pose a serious threat to their personal safety.  The

5    Attorney General may also designate a foreign state under the statute if there has been a natural or

6    environmental disaster resulting in a substantial, but temporary, disruption of living conditions in

7    the foreign state, it is temporarily unable to handle the return of aliens who are nationals of that

8    state, and the foreign state requests designation under the statute.  The Attorney General may

9    otherwise designate a foreign state under the statute if there are extraordinary and temporary

10   conditions in the foreign state that prevent aliens from returning safely to that state.

11   The Attorney General may grant an alien who is a national of a designated state "temporary

12   protected status in the United States and shall not remove the alien from the United States during

13   the period in which such status is in effect."  8 U.S.C. § 1254a(a)(1)(A).  The Attorney General

14   shall also authorize the alien to engage in employment in the United States and provide the alien

15   with an "employment authorized" endorsement or other appropriate work permit.  8 U.S.C. §

16   1254a(a)(1)(B).  In the case of an alien who can establish a prima facie case for eligibility for

17   temporary protected status, the alien shall be provided with the benefits of the statute until a final

18   determination is made with respect to his or her eligibility.  8 U.S.C. § 1254a(a)(4)(B).  An alien

19   who has been convicted of any felony or two or more misdemeanors in the United States is not

20   eligible for temporary protected status.  8 U.S.C. § 1254a(c)(2)(B)(i).  The Attorney General is

21   required to withdraw temporary protected status granted to an alien if the Attorney General finds

22   that the alien is not eligible for such status.  8 U.S.C. § 1254a(c)(3)(A).

23   Defendant Raymundo-Lima's application for temporary protected status was allegedly still

24   pending when he was arrested on June 30, 2002.  *Motion to Dismiss (#17), Exhibit G.*  The order of

25   deportation was therefore held in abeyance until final a determination was made on Defendant's

26   application.  *Id.*  On or about December 4, 2002, Defendant was convicted of transporting

27   undocumented aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and § 1324(a)(1)(A)(v)(II) and

28   was sentenced to a term of 12 months imprisonment to be followed by 36 months of supervised

1   release.  The maximum term of imprisonment under these statutes is not more than 5 years.  8

2   U.S.C. § 1324(a)(1)(B)(ii).  Defendant's conviction therefore qualifies as a felony under federal

3   law.  *See* 18 U.S.C. § 3559(a)(4)-(5).  It also constitutes an "aggravated felony" under the federal

4   immigration statutes.  *See* 8 U.S.C. § 1101(a)(43)(N).

5       The Record of Deportable/Inadmissible Alien prepared by an INS officer after Defendant's

6   December 2002 conviction states that Defendant's "status as an aggravated felon and the expiration

7   of his TPS approval now permit [Defendant] to be removed from the U.S. pursuant to the

8   aforementioned [removal] order."  *Government's Response (#24), Attachment, pg. 29.*  No record

9   has been submitted showing that (1) Defendant Raymundo-Lima's application for temporary

10  protected status was ever formally approved (or denied), or (2) that his approved temporary

11  protected status expired.[3]  Defendant was not prejudiced, however, by the alleged lack of any

12  formal action with respect to his temporary protected status.  If Defendant's application was still

13  pending after December 4, 2002, he was no longer eligible for such status based on his felony

14  conviction and his application would have clearly been denied.  If Defendant's application had been

15  approved prior to December 4, 2002, the Attorney General would have been required to withdraw

16  his temporary protected status based on his conviction.  The Court therefore finds that Defendant's

17  application for temporary protected status does not render his removal from the United States

18  pursuant to the November 30, 1999 removal order invalid for purposes of his prosecution under 8

19  U.S.C. § 1326.

20              **CONCLUSION**

21      Based on the foregoing, the Court concludes that the November 30, 1999 removal order was

22  not entered in violation of Defendant's right to due process of law.  Further, Defendant was not

23  prejudiced by any alleged defects in the November 30, 1999 removal order.  By virtue of his

24  December 2002 aggravated felony conviction, Defendant would have been subject to removal and

25  . . .

26  _____

27      [3] The alien's temporary protected status may end after the Attorney General determines that the
    foreign state no longer meets the conditions for designation under the statute.  8 U.S.C. § 1254a(b)(3)(B)
28  and (d)(3).

15

he would not have been eligible for any form of relief from deportation.  Nor was Defendant's
removal precluded by his application for temporary protected status.  Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss Indictment (#17) be **denied.**

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be
in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has
held that the courts of appeal may determine that an appeal has been waived due to the failure to
file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit
has also held that (1) failure to file objections within the specified time and (2) failure to properly
address and brief the objectionable issues waives the right to appeal the District Court's order
and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153,
1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 12th day of June, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge